**DLA PIPER LLP (US)**
WILLIAM P. DONOVAN, JR., SBN 155881
william.donovan@dlapiper.com
BENJAMIN W. TURNER, SBN 256092
benjamin.turner@dlapiper.com
2000 Avenue of the Stars
North Tower – Suite 400
Los Angeles, CA  90067-4704
Telephone:  310.595.3000
Facsimile:  310.595.3300

Attorneys for Defendant
AVIS RENT A CAR SYSTEM, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN EVENCHIK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVIS RENT A CAR SYSTEM, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | CASE NO.  3:12-cv-00061-BEN-POR<br><br>*(Assigned to Hon. Roger T. Benitez, Courtroom 3)*<br><br>**DEFENDANT AVIS RENT A CAR SYSTEM, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>*[Notice of Motion and Motion to Dismiss; Request for Judicial Notice; and Proposed Orders Submitted Concurrently Herewith]*<br><br>Date:          March 26th, 2012<br>Time:          10:30 a.m.<br>Courtroom:          3<br><br>Complaint Filed:  January 9, 2012 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND................................................................................3

III.    LEGAL STANDARD ..........................................................................................5

IV.     THE COURT SHOULD DISMISS PLAINTIFF'S UNRUH ACT CLAIM ....................5

        A.      Plaintiff's Strained Interpretation Of The Unruh Act Is Untenable And
                Would Expose Businesses To Enormous Liability In A Manner The
                California Legislature Never Intended ........................................................5

        B.      Plaintiff's Unruh Act Claim Is Fatally Flawed Because The Discounts Are
                Available Regardless Of Sexual Orientation ...............................................9

        C.      Plaintiff's Unruh Act Claim Also Fails Because It Is Premised On
                Disparate Impact, Not Intentional Discrimination....................................11

        D.      Avis' Discounts Are Reasonably Related To A Valid Objective..........................14

        E.      Applying The Unruh Act To Bar Avis From Offering Discounts Would
                Constitute Improper Judicial Interference With Economic Policy And
                Violate Avis' Rights To Expressive Association ......................................16

V.      PLAINTIFF'S UNFAIR COMPETITION LAW CLAIM FAILS WITH HER
        UNRUH CLAIM .............................................................................................19

VI.     LEAVE TO AMEND SHOULD BE DENIED .............................................................20

VII.    CONCLUSION...........................................................................................21

-i-

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**FEDERAL CASES**

*Annamaria M v. Napa Valley Unified Sch. Dist.*, C 03-0101 VRW,
   2006 WL 1525733 (N.D. Cal. May 30, 2006) ........................................................................ 7

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937 (2009) ......................................................................... 5, 10, 20

*Bates v. Arata*, C05-3383 SI, 2008 WL 820578 (N.D. Cal. Mar. 26, 2008) ............................ 11

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ............................................................................................................ 10, 14

*Boy Scouts of America v. Dale*
   530 U.S. 640 (2000) ................................................................................................................... 18

*Cloutier v. Prudential Ins. Co. of Am.*
   964 F. Supp. 299 (N.D. Cal. 1997) ........................................................................................... 10

*De Walshe v. Togo's Eateries, Inc.*
   567 F. Supp. 2d 1198 (C.D. Cal. 2008) .................................................................................... 10

*Express, LLC v. Fetish Group, Inc.*
   464 F. Supp. 2d 965 (C.D. Cal. 2006) ...................................................................................... 20

*Facebook, Inc. v. Power Ventures, Inc.*
   No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ...................................... 19

*Fox Broad. Co. v. Fox Broad. Co.*
   CIV.A. 86-4989, 1986 WL 11445 (E.D. Pa. Oct. 9, 1986) ....................................................... 8

*GoEngineer, Inc. v. Autodesk, Inc.*
   No. C 00-4595-SI, 2002 WL 243603 (N.D. Cal. Feb. 14, 2002) ............................................ 20

*Harte-Hanks Communications, Inc. v. Connaughton*
   491 U.S. 657 (1989) ................................................................................................................... 18

*In re VeriFone Sec. Litig.*
   11 F.3d 865 (9th Cir. 1993) ....................................................................................................... 14

*Jones v. United States*
   529 U.S. 848 (2000) ................................................................................................................... 19

*Kaplan v. Cal. Pub. Employees' Ret. Sys.*
   No. C 98-1246 CRB, 1998 WL 575095 (N.D. Cal. Sept. 3, 1998) ........................................ 14

## TABLE OF AUTHORITIES

Page(s)

*Kenneally v. Bank of Nova Scotia*
711 F. Supp. 2d 1174 (S.D. Cal. 2010)....................................................................3

*Lyng v. International Union*
485 U.S. 360 (1988).............................................................................................18

*Mid-W. Mgmt., Inc. v. Capstar Radio Operating Co.*
04-C-720-C, 2004 WL 2535404 (W.D. Wis. Oct. 21, 2004) ...................................8

*Moss v. U.S. Secret Service*
572 F.3d 962 (9th Cir. July 16, 2009)..................................................................14

*NCAA v. Board of Regents of Univ. of Okla.*
468 U.S. 85 (1984)................................................................................................9

*Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*
964 F. Supp. 1369 (N.D. Cal. 1997)......................................................................9

*Pers. Adm'r of Mass. v. Feeney*
442 U.S. 256 (1979).............................................................................................11

*Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*
229 F.3d 435 (3d Cir. 2000) ................................................................................18

*Roberts v. United States Jaycees*
468 U.S. 609 (1984)............................................................................................18

*Royal Ins. Co. of Am. v. S.W. Marine*
194 F.3d 1009 (9th Cir. 1999) ............................................................................20

*Rubio v. Capital One Bank*
572 F. Supp. 2d 1157 (C.D. Cal. 2008) ...............................................................19

*Speyer v. Avis Rent A Car Sys., Inc.*
415 F. Supp. 2d 1090 (S.D. Cal. 2005).................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
551 U.S. 308 (2007).............................................................................................3

*United States v. $1,399,313.74 in U.S. Currency*
591 F. Supp. 2d 365 (S.D.N.Y. 2008) ................................................................14

*Wilkins-Jones v. County of Alameda*, C 08-1485 MHP,
2010 WL 4780291, at *9 (N.D. Cal. Nov. 16, 2010) ............................................6

DLA Piper LLP (US)
Los Angeles

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rules of Civil Procedure, Rule 8 ...........................................................................5, 14

Federal Rules of Civil Procedure, Rule 11 .......................................................................1, 6, 10

**CALIFORNIA CASES**

*Albillo v. Intermodal Container Servs., Inc.*
    114 Cal. App. 4th 190 (2003) ...........................................................................................20

*Angelucci v. Century Supper Club*
    41 Cal. 4th 160 (2007) .......................................................................................................7

*Bank of the West v. Superior Court*
    2 Cal. 4th 1254 (1992) ......................................................................................................20

*Beaty v. Truck Insurance Exchange*
    6 Cal. App. 4th 1455 (1992) .........................................................................................12, 13

*Cal. Grocers Assn. v. Bank of Am.*
    22 Cal. App. 4th 205 (1994) .............................................................................................17

*Cel-Tech Commc'n v. Los Angeles Cellular Telephone Co.*
    20 Cal. 4th 163 (1999) .................................................................................................19, 20

*Cohn v. Corinthian Colleges, Inc.*
    169 Cal. App. 4th 523 (2008) .........................................................................................5, 11

*Frantz v. Blackwell*
    189 Cal. App. 3d 91 (1987) ...............................................................................................10

*Gayer v. Polk Gulch, Inc.*
    231 Cal. App. 3d 515 (1991) .............................................................................................10

*Gregory v. Albertson's, Inc.*
    104 Cal. App. 4th 845 (2002) ...........................................................................................20

*Harris v. Capital Growth Investors XIV*
    52 Cal. 3d 1142 (1991) ................................................................................................passim

*Howe v. Bank of Am. N.A.*
    179 Cal. App. 4th 1443 (2009) .........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*In re Cox*
  3 Cal. 3d 205 (1970) ..................................................................................................14

*In re Firearm Cases*
  126 Cal. App. 4th ......................................................................................................20

*Kasky v. Nike, Inc.*
  27 Cal. 4th 939 (2002) ..............................................................................................19

*Khoury v. Maly's of Cal., Inc.*
  14 Cal. App. 4th 612 (1993) .....................................................................................19

*Koebke v. Bernardo Heights Country Club*
  36 Cal. 4th 824 (2005) .......................................................................................passim

*Lazar v. Hertz Corp.*
  69 Cal. App. 4th 1494 (1999) ...................................................................................17

*Max Factor & Co. v. Kunsman*
  5 Cal. 2d 446 (1936) .................................................................................................16

*Munson v. Del Taco, Inc.*
  46 Cal. 4th 661 (2009) ..............................................................................................11

*Pines v. Tomson*
  160 Cal. App. 3d 370 (1984) ......................................................................................9

*Pizarro v. Lamb's Players Theatre*
  135 Cal. App. 4th 1171 (2006) .............................................................................6, 16

*Roth v. Rhodes*
  25 Cal. App. 4th 530 (1994) .......................................................................................8

*SC Manufactured Homes, Inc. v. Liebert*
  162 Cal. App. 4th 68 (2008) .....................................................................................19

*Semler v. Gen. Elec. Capital Corp.*
  196 Cal. App. 4th 1380, *review denied* (Oct. 19, 2011),
  *reh'g denied* (July 19, 2011) ...............................................................................5, 8, 9

*Starkman v. Mann Theatres Corp.*
  227 Cal. App. 3d 1491 (1991) .............................................................................15, 16

*Sunrise Country Club Ass'n v. Proud*
  190 Cal. App. 3d 377 (1987) ...............................................................................15, 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

*Turner v. Ass'n of Am. Med. Colleges*
 167 Cal. App. 4th 1401 (2008) .................................................................11, 13, 14

4

*Wolfe v. State Farm Fire & Cas. Ins. Co.*
 46 Cal. App. 4th 554 (1996) ...........................................................................17

5

6

*Wynn v. Monterey Club*
 111 Cal. App. 3d 789 (1980) ..........................................................................15

7

8

9

**CALIFORNIA STATUTES & CONSTITUTION**

10

Business & Professions Code § 17200 .................................................................17, 19

11

California's Unruh Civil Rights Act, California Civil Code § 51 .........................................passim

12

California Civil Code § 51(f).............................................................................11

13

California Civil Code § 51.5...........................................................................7, 8, 9

14

California's Unfair Business Practices Act,
 California Business & Professions Code § 17200 *et seq.*.........................................................4

15

California Constitution, Art. I, § 2(a) .......................................................................18

16

17

18

**OTHER AUTHORITIES**

19

16A AM. JUR.2d Constitutional Law § 539 ...............................................................18

20

U.S. Constitution, Amendment I ..........................................................................18

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Avis Rent A Car System, LLC ("Avis") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the Complaint ("SAC") of Plaintiff Lynn Evenchik ("Plaintiff").

## I.  INTRODUCTION

In this frivolous action, Plaintiff Lynn Evenchik seeks to turn the Unruh Civil Rights Act on its head and prosecute Avis, a rental car company, for the clearly lawful conduct of doing business with organizations whose members are travel agents and travel-related businesses.  The purpose of the Unruh Act is to prevent unequal treatment for classes of people who have historically been the subject of invidious discrimination.  Plaintiff – who does not allege that she is a member of any protected class under the Unruh Act – seeks to concoct a discrimination claim because Avis, like many other major travel companies in the United States, offers discounts to travel-related businesses who are members of various organizations.  Plaintiff's strained reading of the Unruh Act would effectively create a "political correctness" cause of action for any person wanting to challenge a company's economic decision to do business with, or market to, a group that has any possible affiliation with members of a protected class, including as examples charities affiliated with a church, disabled veteran groups, or the Boy Scouts and Girl Scouts of America.  Plaintiff's unprecedented reading of the Unruh Act simply finds no support in the law.

In addition, the entire premise of Plaintiff's action suffers from a fatal defect.  Plaintiff claims "discrimination" because she purportedly did not receive the same discount Avis offered to two organizations, but nowhere in her Complaint does Plaintiff allege that these organizations bar membership on the basis of any protected characteristic.  Nor can Plaintiff allege such a fact, consistent with her Rule 11 obligations.  Indeed, with only a few minutes of research on the Internet, Plaintiff could have confirmed that her spurious allegations are meritless both with respect to membership in the challenged groups, plus the obvious fact that the discounts being challenged are generally made available to Avis customers and not limited to members of the two organizations at issue.  Instead, Plaintiff and her lawyers appear to have filed this lawsuit to try and manufacture "discrimination" that does not exist for their own personal gain.

-1-

1    Neither of the two organizations at issue bar membership on the basis of any protected

2    characteristic and – as Plaintiff concedes – the discounts Avis made available to the members of

3    these groups is public information.  Plaintiff does not allege she made any effort to join these

4    groups, that these groups denied her admission, let alone that they denied her admission on the

5    basis of any protected characteristic, or that she requested the same discount from Avis and was

6    declined.  Plaintiff also does not, and cannot, allege that she was refused from using any discounts

7    she did request on her rental from Avis.  Indeed, Plaintiff studiously omits from her Complaint

8    that, in fact, she requested and received two separate discounts from Avis on the subject rental

9    and that, as a result, the rate Plaintiff paid for her vehicle rental was no higher than the rate she

10   could have obtained using the challenged discounts.  Accordingly, any allegation that Plaintiff

11   received unequal, discriminatory treatment from Avis is implausible on its face and entitled to no

12   credence under federal pleading standards.

13   Even if there were any substance to the allegations of "discrimination" Plaintiff makes –

14   and there is none – a myriad of other defects mandate dismissal with prejudice.  Plaintiff's Unruh

15   Act claim is predicated on the purported "result" – not intent – of Avis offering discounts to

16   members of organizations that are allegedly affiliated with a protected class under the Unruh Act.

17   But the law is clear in California that a plaintiff must plead and prove intentional discrimination,

18   not disparate impact, under the Unruh Act.  Plaintiff does not allege (nor can she) that Avis

19   intentionally discriminated against her.  But even if Avis offered the discount exclusively to

20   persons on the basis of a protected characteristic – and Avis did not – this still would not violate

21   the Unruh Act because any alleged differential effect did not involve an arbitrary generalization

22   that perpetuated irrational stereotypes.  Applying the Unruh Act to bar Avis from offering such

23   discounts would expose businesses to new liability and potential court regulation of their day-to-

24   day practices in a manner unintended by the California legislature.  Indeed, under Plaintiff's

25   strained reading, the Unruh Act would violate the California and United States Constitutions by

26   permitting an out-of-state plaintiff to restrict an out-of-state company's right to make nationwide

27   economic decisions and advertise to, and negotiate with, a variety of organizations.

28   For these reasons, as set forth in detail below, Plaintiff's claims should be rejected and this

1    action dismissed with prejudice.

2    **II.**    **FACTUAL BACKGROUND**

3        Avis is a leading worldwide provider of vehicle rentals.  Complaint ¶ 2.  Like many other

4 companies in the travel industry, Avis – an out-of-state company – partners with a wide variety of

5 organizations to promote Avis products and services to those organizations' members.  Complaint

6 ¶¶ 8-11.  Two such organizations with whom Avis and dozens of other major corporations have

7 partnered are the International Gay and Lesbian Travel Association ("IGLTA") and National Gay

8 and Lesbian Chamber of Commerce ("NGLCC").  Complaint ¶ 2.  The Complaint alleges that

9 Avis offers two "Avis Worldwide Discount" codes to members of IGLTA and NGLCC, which

10 provide discounts of "up to" 20% and 25%, respectively.  Complaint ¶¶ 9-11.[1]  The Complaint

11 acknowledges that both discounts were publicly disclosed on the Internet.  *Id*.  Plaintiff Lynn

12 Evenchik, a resident and citizen of Arizona, alleges she rented a vehicle from Avis at the San

13 Diego International Airport for a period of one week.  Complaint ¶¶ 6, 14.  Plaintiff alleges Avis

14 charged her a rate of $311.36 and that, "on information and belief," this was higher than the rate

15 she could have received had she used the discount codes offered to IGLTA and NGLCC

16 members.  Complaint ¶ 14.  In a transparent effort to mask the frivolousness of this action,

17 Plaintiff studiously omits alleging the two discounts she requested and received from Avis.  *See*

18 *id*.  Had she done so, it would be clear that Avis did not charge Plaintiff a higher rate than that

19

20

21

---

22 [1]  It is also frivolous for Plaintiff to suggest that the associational discounts provided to the
challenged groups are unique.  Plaintiff's Complaint puts at issue disclosures on Avis' website,
23 Avis.com, by attaching purported printouts from that site to the Complaint.  *Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Kenneally v. Bank of Nova Scotia*, 711 F.
24 Supp. 2d 1174, 1182 (S.D. Cal. 2010).  What Plaintiff and her counsel fail to tell this Honorable
Court is that Avis.com has a prominent "Deals" link which routinely offers discounts comparable
25 to, and greater than, the challenged rates.  *See* Avis' Request for Judicial Notice ("RJN"), Ex. A;
http://www.avis.com/car-rental/content/deals.ac.  Avis.com also has links to numerous Avis
26 partners whose members also receive discounts of "up to 25%" or more.  To cite just a few
examples, those discounts are provided to members who stay at a La Quinta or Hilton hotel, fly
27 United or American Airlines, or even shop at Best Buy.  *See* RJN Ex. B-F.  Thus, any suggestion
that the discounts at issue are provided only to "gays" and "lesbians" is patently false.

28

offered to customers using the IGLTA and NGLCC discounts.[2]

Also conspicuously absent from the Complaint is an allegation evidencing price discrimination on the basis of any particular sexual orientation.  Plaintiff fails to allege that she was unable to join IGLTA and NGLCC or that membership in these groups is even restricted by sexual orientation.  Membership in these groups, which is targeted to travel agents and travel-related businesses, is not limited to persons of any particular sexual orientation.  Moreover, businesses obviously do not even have a sexual orientation.  Thus, Plaintiff does not and cannot allege that Avis intentionally discriminated against her on the basis of her sexual orientation.  Indeed, Plaintiff does not even bother to allege her own sexual orientation.  Nor can Plaintiff allege that Avis possibly knew her sexual orientation when she rented her vehicle.  Notwithstanding these incurable deficiencies, Plaintiff claims that Avis unlawfully price discriminates on the basis of sexual orientation.

Bereft of any allegations to support discrimination, Plaintiff and her attorneys assert two causes of action:  (1) violation of California's Unruh Civil Rights Act, California Civil Code Section 51; and (2) violation of California's Unfair Business Practices Act, California Business & Professions Code Section 17200 *et seq*.  Complaint ¶¶ 24-34.  Plaintiff purports to assert these claims on behalf of all persons who rented from Avis in California and were charged a greater price than that available under discount codes offered to members of IGLTA and NGLCC.  Complaint ¶ 1.  Yet this class definition – which necessarily includes persons of all sexual orientations who likewise did not receive the IGLTA or NGLCC discount – only underscores the fundamentally flawed nature of Plaintiff's discrimination claim.  Both heterosexual and non-heterosexual customers alike did not receive the IGLTA or NGLCC discounts if, according to Plaintiff, they were not members of these groups.  By the same token, both heterosexual and non-heterosexual customers alike received these discounts if they were members.  In short, Avis did

---

[2]  After the filing of this action, Avis offered Plaintiff's counsel a sworn declaration confirming that, contrary to Plaintiff's allegations, she paid no more than a customer using the IGLTA and NGLCC discount codes.  Even though this indisputable fact completely undermines Plaintiff's entire case, Plaintiff's counsel rejected Avis' offer and continued to pursue this action.

1  not offer the discount on the basis of sexual orientation and Plaintiff cannot plausibly claim that

2  Avis intentionally discriminated on that basis.  As such, Plaintiff does not satisfy federal pleading

3  standards and her claims should be dismissed.

4  **III.   LEGAL STANDARD**

5          In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009), the Supreme Court set

6  out "[t]wo working principles" that frame a district court's analysis of a motion to dismiss for

7  failure to state a claim for relief.  First, "the tenet that a court must accept as true all of the

8  allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

9  the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .

10  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than

11  conclusions." *Id*. at 1949-50.  Second, "only a complaint that states a plausible claim for relief

12  survives a motion to dismiss." *Id*. at 1950. This "plausibility standard" "is not akin to a

13  'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

14  unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's

15  liability, it 'stops short of the line between possibility and plausibility'" of entitlement to relief.

16  *Id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)).  This standard

17  "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

18  **IV.   THE COURT SHOULD DISMISS PLAINTIFF'S UNRUH ACT CLAIM**

19          **A.   Plaintiff's Strained Interpretation Of The Unruh Act Is Untenable And
        Would Expose Businesses To Enormous Liability In A Manner The**
20          **California Legislature Never Intended**

21          Plaintiff's First Cause of Action purports to state a claim for violation of the Unruh Act,

22  which prohibits discrimination on the basis of sex, race, color, religion, ancestry, national origin,

23  disability, medical condition, marital status, or sexual orientation.  Cal. Civ. Code § 51.  The

24  purpose of the Unruh Act is to prevent unequal treatment for disadvantaged classes of people who

25  have been the subject of invidious discrimination.  *Cohn v. Corinthian Colleges, Inc.*, 169 Cal.

26  App. 4th 523, 527 (2008) ("The objective of the [Unruh] Act is to prohibit businesses from

27  engaging in unreasonable, arbitrary[,] or invidious discrimination."); *Semler v. Gen. Elec. Capital*

28  *Corp.*, 196 Cal. App. 4th 1380, 1404, *review denied* (Oct. 19, 2011), *reh'g denied* (July 19, 2011)

1   ("The Legislature passed the Act to remedy discrimination . . . ."); *Pizarro v. Lamb's Players*

2   *Theatre*, 135 Cal. App. 4th 1171, 1176 (2006) (standards that do not "perpetuate any irrational

3   stereotypes" are not actionable under the Unruh Act); *Koebke v. Bernardo Heights Country Club*,

4   36 Cal. 4th 824, 849 (2005) (noting that the California legislature has recognized that non-

5   heterosexuals "have been subject to widespread discrimination").

6          Plaintiff does not, and cannot, allege that the challenged discounts are a blanket exclusion

7   or perpetuate irrational stereotypes of any protected class of persons.  Plaintiff's Complaint does

8   not, and cannot, identify a single act of discrimination.  Plaintiff does not even allege she is a

9   member of any protected class.  Instead, Plaintiff attempts to concoct some actionable

10  discrimination claim through a strained, untenable application of the Unruh Act.  Plaintiff alleges

11  that Avis violated her civil rights – not by refusing to deal with a protected class of which she is

12  apparently not a member – but precisely because Avis did deal with one.  According to Plaintiff,

13  offering discounts to organizations affiliated with a class the Unruh Act was designed to protect

14  itself violates the Unruh Act.  At its core, the Unruh Act clearly protects non-heterosexuals, a

15  class that has faced invidious discrimination.  *See, e.g., Koebke*, 36 Cal. 4th at 829.  By contrast,

16  we know of no case that has ever applied the Unruh Act to restrict businesses from making

17  strategic marketing and partnership decisions that somehow could supposedly disparately impact

18  heterosexuals.  And, in any event, Plaintiff cannot allege consistent with her obligations under

19  Rule 11 that heterosexuals are prevented from receiving the same discounts from Avis using these

20  or other publicly available discount codes.  Plaintiff's attempt to manufacture a dispute by turning

21  the Unruh Act on its head should be rejected.

22          Plaintiff's proffered application of the Unruh Act "would expose businesses to new

23  liability and potential court regulation of their day-to-day practices in a manner never intended by

24  the Legislature."  *Koebke*, 36 Cal. 4th at 853 (quoting *Harris v. Capital Growth Investors XIV*, 52

25  Cal. 3d 1142, 1175 (1991)).  Further, the design of the Unruh Act is not to provide the plaintiffs'

26  bar with a mechanism for extorting settlements out of manufactured discrimination claims, but

27  "to create and preserve a nondiscriminatory environment in California business establishments by

28  banishing or eradicating arbitrary, invidious discrimination by such establishments."  *Wilkins-*

1    *Jones v. County of Alameda*, C 08-1485 MHP, 2010 WL 4780291, at \*9 (N.D. Cal. Nov. 16,

2    2010) (citation and internal quotation marks omitted).  There is no allegation in the Complaint

3    that heterosexuals have been subject to invidious discrimination, nor could there be.

4           Yet, under the strained reading proffered by Plaintiff and her attorneys, the Unruh Act

5    would effectively provide a "political correctness" cause of action for any person who wishes to

6    challenge a company's economic decision to partner with, or market to, a group that has any

7    possible business affiliation with members of a protected class, including the elderly, the

8    religious, and children.  Thus, if this case were to prevail, corporations could be exposed to suit

9    for their business dealings with religious-affiliated charities and hospitals, or even the Boy Scouts

10   of America.  Plaintiff's unprecedented reading of the Unruh Act finds no support in the law.  To

11   the contrary, California courts have noted that "legislators, courts, and commentators at the state

12   and national level have been troubled that the enactment of a private right of action intended to

13   enforce certain types of civil rights legislation may have led to an explosion of assertedly

14   unwarranted or unduly burdensome individual lawsuits brought by professional plaintiffs and

15   bounty-hunting attorneys against business establishments."  *Angelucci v. Century Supper Club*,

16   41 Cal. 4th 160, 178 (2007).  Such is the case here.[3]

17          Mistakenly believing that California Civil Code Section 51.5 somehow supports her

18   reading of the Unruh Act, Plaintiff quotes that statutory provision in her complaint, without

19   further explanation.  *See* Complaint ¶ 26.  Plaintiff's reliance on Section 51.5 is misguided.  As an

20   initial matter, Section 51.5 is not even part of the Unruh Act, which "consists only of § 51."

21   *Annamaria M v. Napa Valley Unified Sch. Dist.*, C 03-0101 VRW, 2006 WL 1525733 (N.D. Cal.

22   May 30, 2006) (citing *Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1449-52 (2006)).  In

23   any event, Section 51.5 adds nothing to Plaintiff's flawed theory of price discrimination.  Section

24

25   [3]  Plaintiff's counsel has sued Avis several times, the most recent of which was a misguided
26   complaint dismissed by the United States District Court for the Southern District of California
     and affirmed by the United States Court of Appeal for the Ninth Circuit.  *See Speyer v. Avis Rent*
27   *A Car Sys., Inc.,* 415 F. Supp. 2d 1090 (S.D. Cal. 2005) (Sabraw, J.), *affirmed*, 242 F. App'x 474,
     475 (9th Cir. 2007) (affirming dismissal of Cal. Civ. Code § 1936 and unfair competition claims
28   against Avis).

51.5 provides in part that:

> "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in [the Act] or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics."

§ 51.5(a).

"The Legislature passed [the Unruh Act] to remedy discrimination in public accommodations;" by contrast, "in passing Civil Code section 51.5, the Legislature was motivated by the Arab League's boycott of Israel and a concern that Arab-owned businesses in California would not sell products or services to Jews." *Semler*, 196 Cal. App. 4th at 1404 (2011) (citing Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2553 (Reg.Sess. 1975–1976) as amended January 22, 1976, p. 2; Review of Selected 1976 California Legislation, Business Associations and Professions; business discrimination (1977) 8 Pacific L.J. 165, 201–203)). Section 51.5 simply "expands on section 51 by, *inter alia*, specifying forms of discrimination, including refusal to deal." *Roth v. Rhodes*, 25 Cal. App. 4th 530, 537 (1994). In other words, the purpose of Section 51.5 is to prohibit companies from refusing to serve people who have been subject to invidious discrimination – not to discourage companies from serving such people. Yet, according to Plaintiff's twisted reading of the statute, Avis violates the law by offering a discount to *any* group that conceivably has an association with a protected characteristic. This is simply not law. Avis is not refusing to deal with anyone.

In sharp contrast, the challenged affiliations confirm that Avis will rent vehicles to **everyone**. Accordingly, Plaintiff's allegations simply do not implicate Section 51.5. While Avis allegedly markets to organizations which permit certain persons to travel without facing discrimination, it is perfectly legal to target advertising to persons with particular demographic characteristics, including persons in a protected class. *See Mid-W. Mgmt., Inc. v. Capstar Radio Operating Co.*, 04-C-720-C, 2004 WL 2535404 (W.D. Wis. Oct. 21, 2004) ("Advertisers often create advertisements that appeal to a selected population or demographic."); *Fox Broad. Co. v. Fox Broad. Co.*, CIV.A. 86-4989, 1986 WL 11445 (E.D. Pa. Oct. 9, 1986) ("In determining a

1  particular station or show on television or radio on which to advertise, advertisers consider

2  principally the geographic market reached, ratings (audience size), demographics (including

3  ethnic, cultural, age, and sex profiles) and cost."); *NCAA v. Board of Regents of Univ. of Okla.*,

4  468 U.S. 85, 111 (1984) (advertisers pay premiums to reach particular demographics).

5        In any event, "[t]he analysis under Civil Code section 51.5 is the same as the analysis . . .

6  set forth for purposes of the [Unruh] Act."  *Semler v. Gen. Elec. Capital Corp.*, 196 Cal. App. 4th

7  1380, 1404, *review denied* (Oct. 19, 2011), *reh'g denied* (July 19, 2011) (citing Assem. Com. on

8  Judiciary, Bill Digest of Assem. Bill No. 2553 (Reg.Sess. 1975–1976) hearing Jan. 19, 1976, pp.

9  1–2 (questioning whether Civil Code section 51.5 is necessary in light of existing protection

10  afforded by Act)); *Pines v. Tomson*, 160 Cal. App. 3d 370, 384 (1984) (holding that "business

11  establishment of every kind whatsoever" has the same meaning under § 51 and § 51.5); *Nicole M.*

12  *By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal.

13  1997) (plaintiff must allege intentional discrimination under section 51.5).  As set forth below,

14  Plaintiff does not and cannot allege that membership in IGLTA or NGLCC is restricted to persons

15  of any particular sexual orientation.  Nor can Plaintiff allege that a facially neutral discount to

16  members of these groups is evidence of any discriminatory intent.  Nor can Plaintiff allege that

17  the challenged discounts are only available to members of these two groups.  Accordingly,

18  Plaintiff's reliance on Section 51.5 is unavailing for the same reasons she cannot state a claim

19  under the Unruh Act.

20       **B.**    **Plaintiff's Unruh Act Claim Is Fatally Flawed Because The Discounts Are**

21              **Available Regardless Of Sexual Orientation**

22        The central allegation in Plaintiff's complaint, and the crux of her entire action against

23  Avis, is that Avis offers discounts to members of IGLTA and NGLCC, organizations whose

24  membership is targeted to travel agents and travel industry businesses.  From this threadbare

25  allegation, Plaintiff leaps to her bald claim that Avis somehow discriminates upon the basis of

26  sexual orientation.  Plaintiff's theory is incurably flawed.

27        Discounts offered by Avis to members in IGLTA or NGLCC (among dozens of other

28  organizations and associations) do not give rise to any cognizable claim under the Unruh Act for

1   a very basic reason:  a particular sexual orientation is not a requirement of membership in these

2   organizations.  To state a claim under the Unruh Act, Plaintiff must plead and prove that Avis

3   denied her equal treatment on the basis of her sexual orientation.  *De Walshe v. Togo's Eateries,*

4   *Inc.*, 567 F. Supp. 2d 1198, 1205 & n.4 (C.D. Cal. 2008).  To create the appearance of potential

5   impropriety, Plaintiff conclusorily alleges that Avis offers discounts on the basis of sexual

6   orientation but fails to allege whether membership in IGLTA and NGLCC is limited to persons of

7   any particular sexual orientation.  As a matter of fact, Plaintiff cannot allege, consistent with her

8   obligations under Federal Rule of Civil Procedure 11, that IGLTA and NGLCC restrict their

9   membership to persons of any particular sexual orientation.  Similarly, Plaintiff cannot allege

10  that only members of IGLTA and NGLCC receive Avis discounts of "up to 25%" off.

11        Distinctions based on membership in open organizations that do not restrict membership

12  on the basis of sexual orientation cannot support a claim under the Unruh Act.  *Frantz v.*

13  *Blackwell*, 189 Cal. App. 3d 91, 96 (1987) ("The significant feature of [cases finding no Unruh

14  Act violation] is that the person's conduct, as opposed to his status, produced the discrimination

15  alleged to be arbitrary."); *Cloutier v. Prudential Ins. Co. of Am.*, 964 F. Supp. 299, 304 (N.D. Cal.

16  1997) ("The Unruh Act does not prohibit discrimination against persons based upon their

17  conduct, but only prohibits that discrimination resulting from the individual's membership in a

18  particular class of persons."); *Gayer v. Polk Gulch, Inc.*, 231 Cal. App. 3d 515, 525 (1991) ("this

19  court is precluded from accepting appellant's invitation to extend the Act to cover discrimination

20  which is neither based on status as a member of a class nor on personal characteristics but is,

21  instead, based on the conduct of an individual").  Unable to plead, because she has no Rule 11

22  basis to do so, that IGLTA or NGLCC restrict their membership on the basis of sexual

23  orientation, Plaintiff falls well short of "nudg[ing]" her discrimination claim "across the line from

24  conceivable to plausible." *Twombly*, 127 S. Ct. at 1974.  "Threadbare recitals of the elements of a

25  cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at

26  1949.  As such, Plaintiff cannot plausibly allege that Avis discriminated against her on the basis

27  of sexual orientation.

28

**C.    Plaintiff's Unruh Act Claim Also Fails Because It Is Premised On Disparate Impact, Not Intentional Discrimination**

Plaintiff's Unruh Act claim suffers from another fatal defect:  A claim of disparate effect is not cognizable under the Unruh Act.  *Koebke*, 36 Cal. 4th at 853-54; *Harris*, 52 Cal. 3d at 1170-74.  Rather, "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."  *Harris*, 52 Cal. 3d at 1175, *overruled on other grounds by Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668 (2009);[4] *Koebke*, 36 Cal. 4th at 854 (holding in a non-ADA suit that "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."); *Cohn v. Corinthian Colleges, Inc.*, 169 Cal. App. 4th 523, 528 (2008) ("The Unruh Act requires intentional discrimination to protect against 'all unreasonable, arbitrary, or invidious discrimination.'"); *Bates v. Arata*, C05-3383 SI, 2008 WL 820578, at *28 (N.D. Cal. Mar. 26, 2008), *order clarified sub nom.*, *Bates v. San Francisco Sheriff's Dept.*, C 05-3383 SI, 2008 WL 961153 (N.D. Cal. Apr. 7, 2008) (conclusory allegations insufficient to establish intentional discrimination under the Unruh Act).

Intentional discrimination for purposes of the Unruh Act requires a showing of "willful, affirmative misconduct."  *Harris*, 52 Cal. 3d 1142, 1172; *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("discriminatory purpose" implies that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group").  Thus, "[a] policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class."  *Turner v. Ass'n of Am. Med. Colleges*, 167 Cal. App. 4th 1401, 1408 (2008).  For instance, in *Harris*, plaintiffs alleged that apartment managers discriminated against women

---

[4]  Interpreting the language, statutory context, and history of Cal. Civil Code Section 51(f), *Munson* held that an Unruh Act claim predicated on a violation of the Americans with Disabilities Act ("ADA") need not show intentional discrimination because the ADA itself does not require such a showing.  46 Cal. 4th at 665.  A plaintiff asserting a non-ADA based Unruh Act claim, however, must still plead and prove intentional discrimination.  *See, e.g., Walsh v. Tehachapi Unified Sch. Dist.*, 1:11-CV-01489 LJO, -- F. Supp. 2d --, 2011 WL 5156791, at *11 (E.D. Cal. Oct. 28, 2011).

1  based on a facially neutral requirement that tenants have a monthly income of three times the

2  monthly rent to qualify for a lease.  Unable to plead intentional discrimination, plaintiffs in that

3  case simply alleged that this policy, though facially neutral, affected a disproportionate number of

4  females because families receiving public assistance are often headed by females and women

5  generally have lower average income than males.  The Court reasoned that such a disparate

6  impact claim under the Unruh Act was fundamentally inconsistent with the statutory text, which

7  "reveals a desire to punish intentional and morally offensive conduct." *Id*. at 1172.  Indeed, "the

8  Act explicitly exempts standards that are 'applicable alike to persons of every sex, color, race,

9  religion, ancestry, national origin, or blindness or other physical disability.'" *Id*.  Yet, "[b]y its

10  nature, an adverse impact claim challenges a standard that is applicable alike to all such persons

11  based on the premise that, notwithstanding its universal applicability, its actual impact demands

12  scrutiny.  If the Legislature had intended to include adverse impact claims, it would have omitted

13  or at least qualified this language in section 51." *Harris*, 52 Cal. 3d at 1172-73.  Accordingly,

14  any allegation that discounts to members of IGLTA or NGLCC somehow affect a

15  disproportionate number of heterosexual customers cannot support a claim under the Unruh Act.

16       Reinforcing this conclusion, the California Supreme Court has rejected a disparate impact

17  claim under the Unruh Act alleging discrimination on the basis of sexual orientation. *See Koebke*,

18  36 Cal. 4th at 831.  In that case the lesbian partner of a woman who belonged to a private country

19  club was denied club privileges available to members' spouses. *Id*.  Plaintiff filed a lawsuit

20  claiming that this policy amounted to discrimination based on sexual orientation because same-

21  sex couples could not legally marry. *Id.* at 854.  The Court reaffirmed that that an Unruh Act

22  violation requires more than a disparate impact on a particular group and concluded the plaintiff

23  could not state a claim under this theory when the policy extended to all unmarried couples,

24  regardless of their sexual orientation.

25       The California Court of Appeal drew the same conclusion in *Beaty v. Truck Insurance

26  Exchange*, 6 Cal. App. 4th 1455, 1466 (1992).  In that case, an insurance company refused to

27  issue plaintiffs, a homosexual couple, a joint umbrella policy for a single premium because the

28  company offered the policy only to married couples.  Plaintiffs sued the insurance company under

1  the Unruh Act, alleging that the company's refusal to offer a joint policy to non-married couples

2  discriminated against homosexuals, who could not marry in California.  The Court of Appeal

3  rejected this claim because the insurance company's decision to issue joint umbrella policies had

4  the same effect on persons of all sexual orientations:

> [P]laintiffs' attempt to hinge the instant action on what they perceive as discrimination on
> the basis of their sexual orientation must fail.  "Homosexuals are simply part of the larger
> class of unmarried persons . . . . [Defendant's policies] have the same effect on the entire
> class of unmarried persons.  Rather than discriminating on the basis of sexual orientation,
> [defendant's policies] distinguish eligibility on the basis of marriage.  There is no
> difference in the effect of the eligibility requirement on unmarried homosexuals and
> unmarried heterosexual employees."

9  *Id.* at 1461.

10  More recently, in *Turner v. Ass'n of Am. Med. Colleges*, 167 Cal. App. 4th 1401 (2008),

11  plaintiffs challenged certain standards for the administration of standardized admissions testing

12  for medical schools, alleging that time limits and other standards discriminated against people

13  who had learning disorders.  The Court of Appeal had little difficulty rejecting that claim, noting

14  that the complained-of standards were facially neutral and extended to all test takers, regardless of

15  their membership in a particular group.  *Id.* at 1401.  As the Court explained, "Plaintiffs' claim

16  under the Unruh Act is effectively an argument that these general policies are discriminatory

17  because they have a disparate impact on those with learning and reading-related disabilities."  *Id.*

18  Reaffirming settled California law, the Court held that plaintiff's proffered "disparate impact

19  analysis cannot be the basis for an Unruh Act claim."

20  Plaintiff's Unruh Act claim suffers from the same fundamental defect identified in *Harris*,

21  *Koebke*, *Beaty*, and *Turner*.  Plaintiff does not and cannot allege any "affirmative misconduct"

22  that is intentionally discriminatory.  *Harris*, 52 Cal. 3d at 1172.  Plaintiff does not and cannot

23  allege that Avis even knew her sexual orientation; indeed, Plaintiff does not even bother alleging

24  what her sexual orientation is.  Instead, Plaintiff offers the threadbare allegation that discounts to

25  members of IGLTA and NGLCC "result in many consumers who are not affiliated with those

26  organizations paying substantially higher rental rates than those made available to gay and lesbian

27  renters."  Complaint ¶ 2.  Plaintiff's Unruh Act claim is explicitly predicated on the purported

28  "result" – not intent – of Avis offering discounts to travel-related businesses who are members of

1    the IGLTA and NGLCC – groups which do not, as explained above, limit membership on the

2    basis of sexual orientation.  Plaintiff's approach – which amounts to nothing more than an

3    unadorned legal conclusion – fails to elevate the her allegations above the "speculative level," and

4    must be rejected.  *Twombly*, 127 S. Ct. at 1964-65; *Kaplan v. Cal. Pub. Employees' Ret. Sys.*, No.

5    C 98-1246 CRB, 1998 WL 575095, at *6 (N.D. Cal. Sept. 3, 1998) ("Plaintiff has relied on

6    wholly conclusory allegations at the pleading stage while hoping to find data to support his

7    [discrimination] claim through discovery; such fishing expeditions are not permissible under

8    federal discovery rules.").

9        As in *Koebke*, Plaintiff's theory "relies on the effects of a facially neutral policy on a

10   particular group and would require [the Court] to infer solely from such effects a discriminatory

11   intent."  *Koebke*, 36 Cal. 4th at 854; *Turner*, 167 Cal. App. 4th at 1409.  No such inference is

12   warranted or permissible under settled California law or the undisputed facts.  *Id*.  As the Court in

13   *Harris* emphasized, permitting plaintiffs to challenge such conduct under a disparate impact

14   theory "would expose businesses to new liability and potential court regulation of their day-to-

15   day practices in a manner never intended by the Legislature."  *Harris*, 52 Cal. 3d at 1174.  Nor is

16   any such inference warranted under Federal Rule of Civil Procedure 8.  *See Moss v. U.S. Secret

17   Service*, 572 F.3d 962, 970 (9th Cir. July 16, 2009) (rejecting threadbare allegation of improper

18   motives, without supporting factual content, as conclusory and not entitled to credence); *In re

19   VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and

20   unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.");

21   *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 374 (S.D.N.Y. 2008) ("A

22   complaint devoid of any facts to support its bare allegations and consisting solely of speculative

23   assertions and innuendo cannot stand.").  Moreover, there can be no disparate impact in any event

24   where the same types of discounts are generally available to Avis customers.

25        **D.     Avis' Discounts Are Reasonably Related To A Valid Objective**

26        The Unruh Act does not prohibit businesses from establishing reasonable regulations that

27   are rationally related to the services performed and the facilities provided.  *In re Cox*, 3 Cal. 3d

28   205, 217 (1970).  "[T]he Unruh Act does not entirely prohibit businesses from drawing

1    distinctions on the basis of the protected classifications or personal characteristics; rather, '[t]he

2    objective of the Act is to prohibit businesses from engaging in unreasonable, arbitrary or

3    invidious discrimination.  Thus, certain types of discrimination have been denominated

4    'reasonable' and, therefore, not arbitrary."  *Howe v. Bank of Am. N.A.*, 179 Cal. App. 4th 1443,

5    1450 (2009).  California courts have thus recognized that legitimate business interests may justify

6    reasonable regulations on its services.  *See, e.g., id.* (bank did not violate Unruh by requiring U.S.

7    citizens, but not foreign nationals, to submit their social security number to open a bank account);

8    *Harris*, 52 Cal. 3d at 1162 (landlord's minimum income requirement for renters a legitimate

9    business interest); *Wynn v. Monterey Club*, 111 Cal. App. 3d 789, 796-97 (1980) (card club's

10   restriction against customer who previously tendered bad checks not arbitrary).

11        In *Sunrise Country Club Ass'n v. Proud*, 190 Cal. App. 3d 377 (1987), a condominium

12   owners' association divided the development into separate "adult" or "family" areas.  *Id.* at 379-

13   80.  Units in "adult" areas were not allowed to be sold or rented to persons with children under 16

14   years of age, and children were not allowed to use "adult" swimming pools.  Plaintiffs bought a

15   condominium in the "adult" area, but had two children living with them.  *Id.*  The Court explained

16   that although the exclusion of children was unlawful, the association's rules were not a violation

17   of the Unruh Act:  The "Act prohibits only unreasonable, arbitrary, or invidious discrimination,

18   not differential treatment based on actual characteristic differences or differences in need of

19   users." *Id.* at 380-81 (emphasis added).  The division of the complex into separate areas with over

20   half the swimming pools available to children was not arbitrary because there was no blanket

21   exclusion.  *Id.* at 382.

22        Similarly, in *Starkman v. Mann Theatres Corp.*, 227 Cal. App. 3d 1491, 1499 (1991), the

23   California Court of Appeal rejected a claim that movie theatre discounts to senior citizens and

24   children constituted arbitrary discrimination under the Unruh Act.  The Court noted that, as a

25   threshold matter, "some promotional discounts would be permissible under the act," such as

26   where a "business might offer a discount to any customer who meets a condition which any

27   patron could satisfy (e.g., presenting a coupon . . . .)." *Id.* at 1497.  But the Court emphasized that

28   even where a business offered price discounts on the basis of personal characteristics, such

1  conduct did not necessarily run afoul of the Unruh Act.  Holding that the movie theatre's

2  discounts to children and senior citizens was permissible under the Unruh Act, the Court

3  explained:

> Establishing different price rates for seniors and children in an amusement business does not perpetuate irrational stereotypes.  The pricing discounts are aimed directly at encouraging attendance at a family-oriented business.  Such classifications recognize that without such incentives these populations may be totally excluded from enjoying some of the pleasures of our society.

7  *Id*. at  1499.

8  Under *Sunrise Country Club Ass'n* and *Starkman*, any perceived differential effect from

9  Avis' discounts would still not run afoul of the Unruh Act.  "Where a business provides discounts

10  based on classes of persons, the test used to determine whether there has been a violation of the

11  Act is whether the discount involves an arbitrary class-based generalization."  *Pizarro*, 135 Cal.

12  App. 4th at 1174.  A rental car company providing discounts to members of organizations whose

13  members are travel agents or travel-related companies is a rational, economic business decision,

14  not arbitrary discrimination that perpetuates irrational stereotypes.

15  **E.  Applying The Unruh Act To Bar Avis From Offering Discounts Would Constitute Improper Judicial Interference With Economic Policy And Violate Avis' Rights To Expressive Association**

17  In challenging the discount codes under the Unruh Act, Plaintiff is effectively asking this

18  Court to decree the rates Avis may charge and dictate the organizations with whom Avis may

19  negotiate marketing agreements.  Such extended judicial interference into the day-to-day

20  economic decisions of businesses is manifestly improper under long-standing California law.  The

21  California Supreme Court long ago pronounced that "[i]t is primarily a legislative and not a

22  judicial function to determine economic policy . . . . This court has neither the power nor the duty

23  to determine the wisdom of any economic policy; that function rests solely with the legislature."

24  *Max Factor & Co. v. Kunsman*, 5 Cal. 2d 446, 454-56 (1936).  Consistent with this principle, the

25  California Supreme Court in *Harris* declined to interfere with a rational, facially neutral business

26  policy by residential landlords to impose minimum income requirements.  As the Court explained

27  there, extending the Unruh Act to business decisions that applied equally to all persons would

28  unnecessarily "involve the courts of this state in a multitude of microeconomic decisions we are

1  ill equipped to make" and would constitute "economic regulation on a vast scale, amounting to

2  judicial price and rent control."  52 Cal. 3d at 1166-67 & n.2.

3       Plaintiff's Unruh Act claim similarly seeks to interject this Court into "microeconomic

4  decisions," including how Avis should advertise its business, with whom it should partner, and

5  what prices it should set.  The Unruh Act, however, cannot be extended in a manner that "would

6  expose businesses to new liability and potential court regulation of their day-to-day practices."

7  *Harris*, 52 Cal. 3d at 1174.  Indeed California decisions have consistently declined to extend state

8  statutes in a manner that would place courts in the position of dictating price controls and

9  economic policy to businesses.  In *Cal. Grocers Assn. v. Bank of Am.*, 22 Cal. App. 4th 205

10  (1994), the court held that an injunction requiring the defendant bank to lower its fee for returned

11  check processing services was "an inappropriate exercise of judicial authority."  *Id.* at 217.  In its

12  reasoning, the court explained that courts should refrain from regulating the fees charged by

13  banks:

14       Judicial review of one service fee charged by one bank is an entirely inappropriate method
        of overseeing bank service fees . . . . The control of charges, if it be desirable, is better

15       accomplished by statute or by regulation authorized by statute than by ad hoc decisions of
        the courts.  Legislative committees and an administrative officer charged with regulating

16       an industry have better sources of gathering information and assessing its value than do
        courts in isolated cases. . . . This case implicates a question of economic policy:  whether

17       service fees charged by banks are too high and should be regulated.  It is primarily a
        legislative and not a judicial function to determine economic policy.

18

19  *Id.* at 218-219.

20       Likewise, in *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494 (1999), the court rejected an

21  Unruh Act claim challenging a surcharge by vehicle rental companies on drivers under the age of

22  25, reaffirming that "the Act does not allow us to engage in complex economic regulation under

23  the guise of judicial decisionmaking.  It is the Legislature's function, not ours, to determine the

24  wisdom of economic policy.  Judicial intervention in such economic issues is improper."  *Id.* at

25  1509; *see also Wolfe v. State Farm Fire & Cas. Ins. Co.*, 46 Cal. App. 4th 554, 562 (1996)

26  (dismissing § 17200 claim in part because "[j]udicial intervention in complex areas of economic

27  policy is inappropriate.").

28       Further, applying the Unruh Act in the manner Plaintiff seeks would violate Avis' free

1   expression rights guaranteed by both the federal and California Constitutions.  U.S. CONST.

2   Amend. I; CAL. CONST., Art. I, § 2(a).  In *Roberts v. United States Jaycees*, 468 U.S. 609

3   (1984), the United States Supreme Court recognized that "implicit in the right to engage in

4   activities protected by the First Amendment" is "a corresponding right to associate with others in

5   pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."

6   *Id.* at 622.  "The constitutional right to free association for expressive purposes is an instrumental

7   one; expressive association is protected as an indispensable means of preserving other individual

8   liberties."  16A AM. JUR.2d Constitutional Law § 539 (emphasis added).  In *Boy Scouts of*

9   *America v. Dale*, 530 U.S. 640 (2000), the Supreme Court explained that interference with the

10  right of expressive association may "take many forms."  *Id.* at 640; *see also Roberts*, 468 U.S. at

11  622 ("Government actions that may unconstitutionally infringe upon this freedom can take a

12  number of forms.").  "It is clear from previous decisions that associational rights are protected not

13  only against heavy-handed frontal attack, but also from being stifled by more subtle governmental

14  interference, and that these rights can be abridged even by government actions that do not directly

15  restrict individuals' ability to associate freely."  *Lyng v. International Union*, 485 U.S. 360, 367

16  n.5 (1988) (internal citations and quotations omitted).

17          Restricting Avis from partnering with organizations whose members are travel industry

18  businesses simply because of some purported affiliation with a protected class violates Avis' right

19  of expressive association.  Commercial motive has never been viewed as a basis for denying First

20  Amendment protection to what is otherwise protected speech.  *See Harte-Hanks*

21  *Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("If a profit motive could

22  somehow strip communications of the otherwise available constitutional protection, our cases . . .

23  would be little more than empty vessels.").  Indeed, "[t]he expansive notions of expressive

24  association used in *Roberts* and *Dale* demonstrate that there is no requirement that an

25  organization be primarily political (or even primarily expressive) in order to receive constitutional

26  protection for expressive associational activity."  *Pi Lambda Phi Fraternity, Inc. v. Univ. of*

27  *Pittsburgh*, 229 F.3d 435, 443 (3d Cir. 2000).  Simply stated, the law allows American businesses

28  like Avis to negotiate marketing agreements with all groups.

1    Courts recognize that statutes should not be given a construction that renders them

2    unconstitutional.  *See Jones v. United States*, 529 U.S. 848, 857 (2000) ("where a statute is

3    susceptible of two constructions, by one of which grave and doubtful constitutional questions

4    arise and by the other of which such questions are avoided, our duty is to adopt the latter").

5    Interpreting the Unruh Act as Plaintiff suggests would do exactly that, providing yet another

6    reason why Plaintiff's Unruh Act claim should be dismissed.

7    **V.    PLAINTIFF'S UNFAIR COMPETITION LAW CLAIM FAILS WITH HER**
     **UNRUH CLAIM**
8

9    In Count Two, Plaintiff alleges a violation of the Unfair Competition Law ("UCL"),

10   Business & Professions Code § 17200 that is derivative of her Unruh Act claim.  Plaintiff bases

11   her UCL claim on the allegation that Avis charged "numerous car renters rates greater than those

12   it makes available to persons who rent cars using the IGLTA and NGLCC [discount] codes."

13   Complaint ¶ 32.  As explained above, allegations that Avis offers discounts to members of

14   IGLTA and NGLCC cannot support a claim under the Unruh Act.  Accordingly, Plaintiff's

15   derivative UCL claim fails with her Unruh Act claim.  *See Facebook, Inc. v. Power Ventures,*

16   *Inc.,* No. C 08-05780 JW, 2010 WL 3291750, at *14-15 (N.D. Cal. July 20, 2010) (dismissing

17   UCL claim premised on same conduct found to be lawful under Sherman Act); *SC Manufactured*

18   *Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 93 (2008) (failure of Cartwright Act claim means

19   plaintiff cannot allege that the same conduct was "unfair" under the UCL); *Rubio v. Capital One*

20   *Bank*, 572 F. Supp. 2d 1157, 1168-69 (C.D. Cal. 2008) (UCL claims premised on conduct that

21   cannot be considered unlawful, unfair or fraudulent fail), *rev'd in part on other grounds*, 613 F.3d

22   1195 (9th Cir. 2010).

23   Nor could Plaintiff otherwise state a claim under the UCL.  The UCL defines unfair

24   competition to "mean and include any 'unlawful, unfair or fraudulent business act or practice.'"

25   *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  Thus, to plead a claim for unfair competition

26   pursuant to the UCL, Plaintiff must allege conduct by Avis that is either (1) fraudulent, (2)

27   unlawful, or (3) unfair.  Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'n v. Los Angeles*

28   *Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App.

1   4th 612, 619 (1993).  Plaintiffs cannot state a claim under any of the three prongs of the UCL.  To

2   state a valid cause of action for unlawful conduct under the UCL, Plaintiffs must plead an illegal

3   act.  *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003).  As

4   explained above, nothing about Avis' alleged conduct is unlawful under the Unruh Act, and

5   Plaintiff does not allege Avis violated any law.  To state a claim under the fraudulent prong of the

6   UCL, Plaintiff must plead and prove a misrepresentation "disseminated to the public."  *Bank of*

7   *the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992); *Express, LLC v. Fetish Group, Inc.*,

8   464 F. Supp. 2d 965, 980 (C.D. Cal. 2006).  Plaintiff does not and cannot identify and such

9   misrepresentation.  To the contrary, as Plaintiff acknowledges in the Complaint, the discounts

10  were publicly disclosed.  Complaint ¶¶ 9, 11.

11          Finally, any contention that Avis' conduct was "unfair" would likewise fail.  While the

12  UCL does not define the term "unfair," California courts have "sympathized with the need for

13  businesses in California to have a 'reasonable certainty' of the conduct permitted by California

14  law" and have consequently "rejected prior definitions of unfairness as 'too amorphous'" in favor

15  of a standard restricting the term's "potentially limitless application."  *In re Firearm Cases*, 126

16  Cal. App. 4th at 977-979 (discussing *Cel-Tech Commc'n*, 20 Cal. 4th at 180).  Thus, any finding

17  of "unfairness" must "be tethered to a constitutional or statutory provision or a regulation

18  carrying out statutory policy."  *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002)

19  (quotation and citation omitted).  Because the complained-of discounts do not implicate the

20  Unruh Act or any other constitutional or statutory provision or policy, Avis' alleged conduct

21  cannot support a claim under this prong of the UCL.  *See GoEngineer, Inc. v. Autodesk, Inc.*, No.

22  C 00-4595-SI, 2002 WL 243603, at *9 (N.D. Cal. Feb. 14, 2002) (unfair competition claim

23  premised on the same alleged conduct underlying other claims fails with those claims).

24  **VI.      LEAVE TO AMEND SHOULD BE DENIED**

25          Leave to amend may be denied upon a showing of futility of the amendment.  *Royal Ins.*

26  *Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999).  Thus, leave to amend should be

27  granted only if the plaintiffs can show that the claims, as amended, establish a plausible

28  entitlement to relief.  *See Iqbal*, 129 S.Ct. at 1949.  In this case, Plaintiff's claims could not be

1   saved by a further amendment.  The Unruh Act does not apply to the conduct alleged by Plaintiff

2   and the purported "discrimination" in any event hinges on some speculated, disparate "result" of

3   Avis offering discounts.  But a disparate impact claim is not cognizable under the Unruh Act, and

4   Plaintiff does not and cannot allege intentional discrimination.  As such, this is exactly the

5   situation where leave to amend should be denied.

6   **VII.    <u>CONCLUSION</u>**

7          For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

8   Dated:  February 22, 2012                    DLA PIPER LLP (US)

9

10                                               By  /s/ William P. Donovan, Jr.
                                                     WILLIAM P. DONOVAN, JR.
11                                                   Attorneys for Defendant
                                                     AVIS RENT A CAR SYSTEM, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28