# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN EVENCHIK, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　　　　Plaintiffs,<br>　vs.<br><br>AVIS RENT A CAR SYSTEM, LLC,<br><br>　　　　　　　　　　　　　Defendant. | CASE NO. 12-cv-61 BEN (DHB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS and DIRECTING COMPLIANCE WITH FED. R. CIV. P. RULE 5.1**<br><br>[Docket No. 12] |

Presently before the Court is the motion to dismiss filed by Defendant Avis Rent A Car System, LLC ("AVIS"). For the reasons stated below, the motion is denied.

## I. BACKGROUND

According to the Complaint, Plaintiff rented a car from AVIS in July 2011, in the County of San Diego, California. She was charged $311.36. According to the Complaint, at that time AVIS gave large price discounts to members of two groups: the International Gay and Lesbian Travel Association and the National Gay and Lesbian Chamber of Commerce. Plaintiff is not a member of either group. The Complaint further alleges that AVIS did not give her the gay and lesbian group member price discount. Plaintiff alleges that California's Unruh Civil Rights Act (California Civil Code § 51 and its related section § 51.5) prohibits a business from discriminating

between its customers on the basis of sexual orientation. According to the Complaint, a business also violates California Business and Professions Code § 17200, which prohibits unfair business practices, when it gives price discounts to some customers, but not all customers, on the basis of sexual orientation. Plaintiff also asserts a class action on behalf of other similarly situated persons who rented cars from AVIS in California and who did not receive the gay and lesbian group member price discount. AVIS does not challenge the class action allegations at this time. AVIS seeks only dismissal of the Complaint on the basis that Plaintiff has failed to state a claim for relief.

## II.  DISCUSSION

### A. Request to Take Judicial Notice

Defendant requests the Court take judicial notice of six documents in support of their motion to dismiss. The six documents appear to be screen shots of various business web pages. Exhibits A and B are undated AVIS web pages listing various offers. Exhibit C is a Hilton web page dated Feb. 22, 2012. Exhibit D is an United Airlines web page (undated). Exhibit E appears to be an aavacations.com web page (undated). Exhibit F appears to be a myrewardzone.bestbuy.com web page (undated). None of these exhibits are the type of documents for which judicial notice can be taken under Federal Rule of Evidence 201(b).

Federal Rule of Evidence 201(b) explains that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Judicial notice is proper only when the matter is "beyond reasonable controversy." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting Fed. R. Evid. 201 advisory committee note). Screen shots of web pages, especially because of the ever-changing content, are not typically the type of document containing facts, the accuracy of which is capable of ready determination. *See e.g.*, *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167-68 (S.D. Cal. 2010) (Anello, J.) (declining to take judicial notice of changing web screen shots); *Ferrington v. McAfee, Inc.*, 2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) (declining to take judicial notice of changing web screen shots provided by defendant); *but see Kenneally v. Bank of N.S.*, 711 F. Supp. 2d 1174, 1183 (S.D. Cal. 2010)

1  (Hayes, J.) (taking judicial notice of unchallenged material on website run by U.S. Department of
2  Housing and Urban Development regarding property owner's registration under the Land Sales
3  Act). The Court declines AVIS's request to take judicial notice of the web page screen shots
4  under Rule 201.

5  Alternatively, AVIS argues that the screen shots should be considered under the doctrine of
6  incorporation by reference. In resolving a Rule 12(b)(6) motion, a court generally cannot consider
7  material outside the complaint. *Branch v. Tunnel,* 14 F.3d 449, 453-54 (9th Cir. 1994). However,
8  a court may consider exhibits attached to the complaint. *Id*. A court may treat such a document as
9  "part of the complaint, and thus may assume that its contents are true for purposes of a motion to
10 dismiss under the Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see
11 also Castagnola v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 82026 (N.D. Cal. June 13, 2012)
12 (considering screen shots of defendant's web pages which plaintiff incorporated into his
13 complaint). "Even if a document is not attached to a complaint, it may be incorporated by
14 reference into a complaint if the plaintiff refers extensively to the document or the document forms
15 the basis of the plaintiff's claim." *Ritchie,* 342 F.3d at 908*.* "The defendant may offer such a
16 document, and the district court may treat such a document as part of the complaint, and thus may
17 assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*
18 (doctrine applies when a claim about insurance coverage is based on the contents of a coverage
19 plan or when a claim about stock fraud is based on contents of SEC filings).

20  AVIS asserts that Plaintiff references the AVIS website in her Complaint. The gist of the
21 Complaint is about rental discounts based on a customer's sexual orientation not offered to
22 Plaintiff at an AVIS airport car rental counter. It is not about rental transactions made through
23 AVIS's website. Paragraph 10 of the Complaint refers to a "Avis-Prouder" website page, but the
24 exhibit appears to be part of a computer file labeled: mhtml:file://C:\Documents and
25 Settings\david\Destop\Avis - Prouder.mht. *See* Notice of Lodgment in Support, Exh. B. None of
26 the documents offered by AVIS purport to complete the "Avis - Prouder" document.

27  The Complaint also refers generally to AVIS's website while quoting language about
28 commission rates AVIS pays to its rental car affiliates. None of the documents offered by AVIS

1  purport to complete the terms upon which AVIS offers commissions.  AVIS cites no other
2  references to AVIS's website nor references to the websites of Hilton, United Airlines,
3  aavacations.com, or myrewardzone.bestbuy.com.  The Court finds that the six exhibits offered by
4  AVIS are not proper documents for applying the incorporation by reference doctrine.  Defendant's
5  request to take judicial notice is denied.

**B.  Defendant's Motion to Dismiss**

Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate under Rule 12(b)(6) if the Complaint fails to state a plausible claim for relief on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully").  Under this standard, dismissal may be obtained if the Complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the Complaint lacks a cognizable legal theory under which relief may be granted.  *Twombly*, 550 U.S. at 556.

California law describes the contours of the claim for relief, since this suit is based upon diversity jurisdiction.  "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum."  *U. S. Fidelity & Guar. Co. v. Lee Invest., LLC*, 641 F.3d 1126, 1133-34 (9th Cir. 2011) (citations omitted).  "In analyzing state law in a diversity case, we are bound by the decisions of the state's highest court. . . [and] [i]f the California Supreme Court has not decided the question, we are required to ascertain from all the available data what the state law is and apply it."  *Id.* (citations omitted).

### 1. Violation of California's Unruh Civil Rights Act

AVIS moves to dismiss the first claim for relief which alleges AVIS violated California's Unruh Civil Rights Act, California Civil Code §§ 51 *et seq*.[1]  A straight forward reading of the Act

---

[1] California Civ. Code § 51 states in its entirety:

(a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.  (b) All persons within the jurisdiction of this state are free and equal, and no

> matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. (c) This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation or to persons regardless of their genetic information. (d) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws. (e) For purposes of this section: (1) "Disability" means any mental or physical disability as defined in Sections 12926 and 12926.1 of the Government Code. (2) (A) "Genetic information" means, with respect to any individual, information about any of the following: (i) The individual's genetic tests. (ii) The genetic tests of family members of the individual. (iii) The manifestation of a disease or disorder in family members of the individual. (B) "Genetic information" includes any request for, or receipt of, genetic services, or participation in clinical research that includes genetic services, by an individual or any family member of the individual. (c) "Genetic information" does not include information about the sex or age of any individual. (3) "Medical condition" has the same meaning as defined in subdivision (h) of Section 12926 of the Government Code. (4) "Religion" includes all aspects of religious belief, observance, and practice. (5) "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth. "Sex" also includes, but is not limited to, a person's gender. "Gender" means sex, and includes a person's gender identity and gender expression. "Gender expression" means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth. (6) "Sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation" includes a perception that the person has any particular characteristic or characteristics within the listed categories or that the person is associated with a person who has, or is perceived to have, any particular characteristic or characteristics within the listed categories. (7) "Sexual orientation" has the same meaning as defined in subdivision (r) of Section 12926 of the Government Code. (f) A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section.

California Civil Code §51.5(a) and (b) state:

> "(a) No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics. (b) As used in this section, "person" includes any person, firm, association, organization, partnership, business trust, corporation, limited liability company, or company.

1  in light of the California Supreme Court decisions interpreting the Act, lead to the conclusion that
2  Plaintiff has stated a plausible claim for relief, *i.e.*, that AVIS violated the prohibitions of the Act
3  regarding discrimination on the basis of sexual orientation.  Plaintiff plausibly alleges a concrete
4  business transaction took place.  In addition, Plaintiff plausibly alleges that during the transaction
5  AVIS charged her a higher price to rent a car because AVIS did not perceive her to be a lesbian or
6  gay customer or because AVIS did not perceive her to be associated with favored lesbian or gay
7  customer groups.

8        The Unruh Civil Rights Act "prevents discrimination in the form of pricing differentials."
9  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000) (citing *Koire v.*
10 *Metro Car Wash*, 40 Cal. 3d 24 (1985)).  In *Koire*, the California Supreme Court observed that
11 "[c]ourts have repeatedly held that the Unruh Act is applicable where unequal treatment is the
12 result of a business practice."  40 Cal. 3d at 29.  The supreme court explained, "The Act's
13 proscription is broad enough to include within its scope discrimination in the form of sex-based
14 price discounts."  *Id.* at 30.  It held that the Unruh Act was violated by a car wash business
15 offering reduced rates to women, but not men.  *Id.* at 32.  In its ruling, the supreme court
16 specifically warned against the offering of price discounts based upon sexual orientation.  In
17 regards to the type of discounts Plaintiff alleges AVIS gave to groups based on sexual orientation,
18 the *Koire* court said: "It would be no less a violation of the Act for an entrepreneur to charge all
19 homosexuals . . . reduced rates in his or her restaurant or hotel in order to encourage one group's
20 patronage and, thereby, increase profits."  *Id.*  This is similar to the violation of the Act Plaintiff
21 alleges.

22       California Civil Code § 52(a) "creates a private right of action against anyone who 'denies,
23 aids or incites a denial, or makes any discrimination or distinction contrary to Section 51.'"
24 *Stevens v. Optimum Health Inst.*, 810 F. Supp. 2d 1074, 1085 (S.D. Cal. 2011) (Hayes, J.).  The
25 California Supreme Court has made it clear that a customer does not have to make an express
26 demand for equal treatment in order for a business to violate the Act.  *Angelucci v. Century Supper*

27
28 California Government Code §12926(r), which defines "sexual orientation" for purposes of the Unruh Civil Rights Act states: "'Sexual orientation' means heterosexuality, homosexuality, and bisexuality."

*Club*, 41 Cal. 4th 160, 164 (2007) (concluding that a valid claim for relief under the Unruh Act does not require "customers who are discriminated against when they present themselves at a business establishment and pay the price of admission [to] also [] demand equal treatment and be refused"). Finally, the Act must be construed liberally to carry out its purpose of creating and preserving a nondiscriminatory environment in California business establishments. *Id.* at 167 ("[T]he [Unruh] Act must be construed liberally in order to carry out its purpose."). Applying *Angelucci* to this case, the Court finds that Plaintiff need not allege that she requested and was denied an equally discounted car rental rate in order to state a cognizable claim for relief. Since Plaintiff has alleged a violation of state law and state law provides a private right of action, the Complaint sets forth a plausible claim for relief. Nevertheless, AVIS puts forth scattered arguments, knocks over straw men, falls back on an *ad hominem* attack,[2] and invokes the Free Speech Clause of the United States Constitution, in an effort to pump up its deflated motion to dismiss. None of these asservations are persuasive. Some of the more substantial arguments are addressed here.

AVIS asserts throughout its briefs that the purpose of California's Unruh Civil Rights Act is (to use AVIS's words): "to prevent unequal treatment for disadvantaged classes of people who have been the subject of invidious discrimination." Neither the language of the statute nor the case law speak of protecting disadvantaged classes. Instead, the Act seeks to prevent any discrimination among people on the basis of listed characteristics. Thus, because the Act prohibits discrimination on the basis of sex, for example, it prohibits business from charging men more than women for the same services. *See Koire,* 40 Cal. 3d at 32. In finding that charging men more than women for a car wash, the California Supreme Court did not suggest that men were a "disadvantaged class" or that men had been previously subjected to "invidious discrimination." Instead, it found that the unequal price treatment was the prohibited discrimination. One court

---

[2]Throughout its reply brief, AVIS slings personal attacks at Evenchik. For example, AVIS says Plaintiff "has invoked the Unruh Act as a weapon in her moral crusade against a class of persons she apparently finds objectionable;" and "this lawsuit is a manufactured attempt by an out-of-state Plaintiff to turn the Unruh Act . . . into a weapon to pursue her social agenda." There is nothing in the Complaint that supports these barbs. Demeaning language and offensive remarks have no place in federal court briefs.

described the Act's purpose like this:

> The objective of the Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination. Therefore, the Act applies not merely in situations where businesses exclude individuals altogether, but also where treatment is unequal. *Unequal treatment includes offering price discounts on an arbitrary basis to certain classes of individuals.*

*Pizarro v. Lamb's Players Theatre*, 135 Cal. App. 4th 1171, 1174 (2006) (citations omitted) (emphasis added). The same point was made by the supreme court in *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 849 (2005) ("But *Harris*[*v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991)] did not hold that only classes protected under federal equal protection law were worthy of protection under the [Unruh] Act, nor did we require a history of stigmatization in order to bring a category within the ambit of the [Unruh] Act.").

The approach of the Unruh Act, prohibiting all arbitrary discrimination without regard to "protected classes" is quite different from the approach AVIS argues. AVIS puts much of its argument in terms of protected classes and past stigmatization. For example, AVIS incorrectly asserts, "The purpose of the Unruh Act is to prevent unequal treatment for disadvantaged classes of people who have been the subject of invidious discrimination," and then argues that the Complaint fails to state a claim because "Plaintiff does not even allege she is a member of a protected class." This misapprehension runs through AVIS's briefs. Likewise, AVIS argues "[t]here is no allegation in the Complaint that heterosexuals have been subject to invidious discrimination." But California law does not require a plaintiff to be a member of any protected class or to have been previously subject to discrimination, in order to bring an action under the Unruh Act. Consequently, this thread of argument is unavailing.

Another thread of argument runs through AVIS's briefs: (a) since Plaintiff might have been able to qualify herself for other rental discounts; and (b) since Plaintiff could have become a member of the International Gay and Lesbian Travel Association or the National Gay and Lesbian Chamber of Commerce and thus qualified for its favored discounts (a subset of the first argument), there was no pricing discrimination. There are at least two problems with this thread. The California Supreme Court made clear in *Angelucci,* 41 Cal 4th at 164, that as a matter of law, a business customer need not ask for equal treatment or for the benefit of a discriminatory discount

for a violation of the Unruh Act to occur. In contrast, AVIS argues that Plaintiff could have asked for another discount such as a Hilton Honors member discount or a Best Buy Rewards member discount, or that Plaintiff could have become a member of the International Gay and Lesbian Travel Association or the National Gay and Lesbian Chamber of Commerce, and thus been eligible for a discounted rental rate. This argument disregards the clear holding of *Angelucci*.

The other problem with this thread is that it assumes an evidentiary showing which has yet to be made. There is no evidence at this stage that Plaintiff was offered a Hilton Honors member discount or a Best Buy Rewards member discount. There is no evidence that AVIS offered Plaintiff any discount equal to the rental discount given members of the International Gay and Lesbian Travel Association or the National Gay and Lesbian Chamber of Commerce. There is no evidence that any of the discounts AVIS refers to as being on its "deals" webpage were offered to Plaintiff when she rented her car. And although AVIS repeats it often as fact, there is no evidence that membership in either International Gay and Lesbian Travel Association or the National Gay and Lesbian Chamber of Commerce was open to Plaintiff when she rented her car. Finally, there is no evidence that any of the other discounts would have been as favorable as the alleged discriminatory discounts.[3] To the extent that the existence of other discounts are relevant (which *Angelucci* suggests they are not), they may be considered later at summary judgment or trial. They may not be considered when ruling on a motion to dismiss.

To the extent that it is relevant whether Plaintiff could have become a member of either the International Gay and Lesbian Travel Association or the National Gay and Lesbian Chamber of Commerce, there is no evidence of the membership requirements or her eligibility in the record. The salient allegation of the Complaint is that AVIS charged Plaintiff more money for her car rental than it would have charged Plaintiff if Plaintiff had been a member of the favored gay and lesbian groups. This is sufficient to plausibly allege a violation of § 51.

Another thread of argument repeated in AVIS's briefs is the notion that the Complaint alleges disparate impact and disparate impact is not actionable under the Unruh Act. AVIS is

---

[3] AVIS argues that because Plaintiff requested and received other discounts, the actual rate she paid for her rental car was no higher than the rate she could have obtained using the challenged discounts. Unfortunately, AVIS offers no evidence to prove its statement.

certainly correct that the Unruh Act does not prohibit cases of disparate impact. *See Koebke*, 36 Cal. 4th at 854 ("We held, therefore, that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.  A disparate impact analysis or test does not apply to Unruh Act claims.") (internal quotations marks omitted).  However, Plaintiff alleges disparate treatment based upon a facially discriminatory method of charging rental customers – not a disparate impact.  Gay and lesbian renters were given discounts because of their sexual orientation.  Plaintiff was not given a discount because she was (or was perceived to be) of a different sexual orientation.  Thus, the Complaint alleges AVIS applied an arbitrary generalization focusing on the unlawful customer characteristic of sexual orientation.  Some promotional discounts are permissible under the Act.  A business could lawfully offer reduced rates to all customers on one day each week.  *Starkman v. Mann Theatres Corp.*, 227 Cal. App. 3d 1491, 1498 (1991) (*citing Koire*, 40 Cal. 3d at 24).  Or a business could offer a discount to any patron who presented a coupon. *Id.*  A business could lawfully reduce a price for purchasing commodities in quantity, or for making advance reservations.  *Id.*  "The key is that the discounts must be applicable alike to persons of every sex, color, race, etc. . . . instead of being contingent on some arbitrary class-based generalization." *Id.* (internal quotations omitted).  The type of discount AVIS allegedly offers, one based upon a particular sexual orientation, is facially discriminatory and not permissible under the Unruh Act.

     AVIS also sets up a straw man and complains that "Plaintiff is effectively asking this Court to decree the rates Avis may charge and dictate the organizations with whom Avis may negotiate marketing agreements."  The Complaint, however, does not ask AVIS to charge any particular rental rates.  It only asks that the rates (whatever AVIS decides to charge) be the same for all customers without regard to their perceived sexual orientation.  AVIS complains that Plaintiff's Unruh Act claim will involve the Court in "extended judicial interference into the day-to-day economic decisions" and setting economic policy for AVIS's business.  A § 51 claim, however, will only involve the court to the extent AVIS makes day-to-day decisions or sets its economic policy using intentional price discrimination based on sexual orientation which is prohibited by the Act.  No unlawful discrimination; no judicial interference.

AVIS maintains that this action is a manufactured lawsuit brought by a professional plaintiff and bounty-hunting attorneys. To back up its aspersion, it points to nothing more than one 2005 lawsuit initiated by the same attorneys and a different plaintiff pursuing a different legal claim.[4] There is nothing to suggest that Plaintiff Evenchik is a professional plaintiff who manufactured this lawsuit. A search of this Court's own records and a Lexis search fails to unearth any prior lawsuits filed by Lynn Evenchik. Although AVIS may disagree, these are not the tell-tale signs of professional plaintiffs and bounty-hunting attorneys. Moreover, it is of no legal relevance. In *Angelucci*, the California Supreme Court addressed a complaint that the plaintiffs made repeated visits to a business in order to increase the amount of statutory damages and their attorneys filed numerous similar lawsuits. Although concerned, the supreme court concluded that it was up to the legislature to protect against abusive private legal actions and settlement tactics. *Angelucci*, 41 Cal. 4th at 179. In other words, being sued by a professional plaintiff with the help of bounty-hunting attorneys is not a valid basis under California law for granting a motion to dismiss.

AVIS also argues the Unruh Act claim must be dismissed because AVIS's discount policies are neither unreasonable, arbitrary or invidious. That case must be made at summary judgment or at trial. "Although California courts have concluded that reasonable restrictions may be put in place so long as the restrictions are rationally related to the services performed . . . , whether the policies in this case are reasonable, not arbitrary or not invidious under the Unruh Act is a question that cannot be addressed in a motion to dismiss." *Angstman v. Carlsbad Seapoint Resort II, L.P.*, 2011 WL 2009999 (S.D. Cal. May 23, 2011) (Lorenz, J.).

Lastly, AVIS argues that if the Unruh Act makes giving discounts to the International Gay and Lesbian Travel Association or the National Gay and Lesbian Chamber of Commerce unlawful, then the Unruh Act runs afoul of AVIS's federal and state constitutional rights of free expression and free association. Of course, a motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. The Court is not aware of a

---

[4] That action, Case No. 05cv1039 DMS, concerned whether a California statue prohibiting airport concession recovery fees could be applied when AVIS rents cars outside California.

case, and AVIS cites none, where a defendant attempted to raise a constitutional challenge to a state law claim in a motion to dismiss.

Further, a defendant's constitutional challenge to California's Unruh Act raises two additional concerns. The first question is whether AVIS should notify the attorney general of California as required by Federal Rule of Civil Procedure 5.1.[5] *See also* 28 U.S.C. § 2403(b) ("In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality."). The attorney general would then have 60 days to decide whether to intervene to defend the statute. In order to protect the State's right to intervene and defend its statute, the Court directs counsel for AVIS to file within 14 days of this Order either a notice that it has complied with Rule 5.1, or a notice that AVIS is abandoning its constitutional defense.

The second question is whether this Court should abstain from deciding the constitutional question. Under the *Pullman* abstention doctrine, when a state law is being challenged in federal court as unconstitutional and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case, allowing, instead, the state courts to decide the state issues. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 306 (1979). The rationale behind the *Pullman* doctrine is the avoidance of unnecessary resolution of constitutional

---

[5] Rule 5.1(a) states:

Notice by a Party. A party that files a . . . written motion . . . drawing into question the constitutionality of a federal or state statute must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if: (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned – or on the state attorney general if a state statute is questioned . . . .

questions by allowing state courts an opportunity to interpret an ambiguous state statute so that it is constitutional. *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975) ("Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law."). In this lawsuit, neither party has addressed *Pullman* abstention. Without full briefing on the abstention issue, including briefing on the position of the attorney general (should she decide to intervene), this Court declines to abstain.

AVIS's other arguments in support of its motion to dismiss the Unruh Civil Rights Act claims are either restatements of the already-discussed arguments or are insubstantial. The motion to dismiss the Unruh Civil Rights Act claim is denied.

**2. Violation of California's Business and Professions Code § 17200**

For her second claim for relief, Plaintiff alleges AVIS violated California Business and Professions Code § 17200, which prohibits unfair business practices. AVIS argues that Plaintiff has failed to plead a viable Unruh Act claim and that to the extent the § 17200 claim derives from the failed claim, the § 17200 claim fails as well. This argument is moot because Plaintiff has sufficiently pled a plausible Unruh Act claim.

AVIS alternatively argues that Plaintiff has not sufficiently pled an independent § 17200 claim. This argument also fails. To state a claim under § 17200, "a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair." *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1136 (2010). Each prong of § 17200 describes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). As to the unlawful prong, § 17200 incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). As to the unfair prong, "[a]n unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)). As to the fraudulent prong, "fraudulent acts are ones

where members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).

Plaintiff alleges independently of the Unruh Act that the AVIS discount given only to customers of a favored sexual orientation is an unfair business practice. The California Supreme Court has decided that a business practice may violate § 17200 without violating a specific statute. *Cel-Tech Com., Inc. v. L. A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("The statutory language referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law."). However, to circumscribe the potential liability, the California Supreme Court requires a redressable unfair business practice to be in violation of public policy, and "the public policy triggering the violation must be tethered to a constitutional or statutory provision." *Id.* at 185. The California public policy against sexual orientation discrimination, as reflected in the Unruh Civil Rights Act, is such a policy. The allegations in the Complaint, of course, may prove to be untrue. That judgment is reserved for later proceedings. At this juncture, however, Plaintiff has stated a plausible claim for relief under California Business and Professions Code § 17200. The Defendant's motion to dismiss this claim is also denied.

### III. CONCLUSION

AVIS's motion to dismiss is denied. AVIS is directed to file within 14 days of this Order either a notice that it has complied with Federal Rule of Civil Procedure 5.1, or a notice that it is abandoning its constitutional defense.

DATED: September 17, 2012

Hon. Roger T. Benitez
United States District Judge